181 So. 309

### HUMPHRIES v. STATE.

#### 7 Div. 311.

Court of Appeals of Alabama.

Feb. 22, 1938.

Rehearing Denied March 22, 1938.

160

McCord & McCord and Thos. H. Stephens, all of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., and B. W. Simmons, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

No question is presented upon the regularity of the record.

Appellant admittedly killed Walter Noojin, the deceased named in the indictment, by shooting him with a pistol. The trial resulted in his conviction for the offense of murder in the second degree and his punishment was fixed at imprisonment in the penitentiary for 15 years.

The theory of the defense was that he was justified in shooting and killing deceased, in that he was acting in the defense of the brother of defendant, whose name is Charles Humphries. Defenses of this character are available under the laws of this state; the rule in this connection has been announced in numerous decisions of the appellate courts of this state and is to the effect, the right of one to defend another is coextensive with the right of the other to defend himself, and one who defends the other is upon no higher plane than the one defended; and so, if the one defended is not free from fault in bringing on the difficulty, his defender cannot be, for when one intervenes to defend another, even though that one be in imminent danger to life or limb, he does so at his peril, if he strikes in defense of one not free from fault in bringing on the difficulty. Stated otherwise, as expressed by Chief Justice Anderson, in the case of Griffin v. State, 229 Ala. 482, 158 So. 316, 317: "It is well settled by the decisions of this court that he who invokes self-defense in protection of a third person is placed in the shoes of him whom he seeks to protect." (Citing cases.)

The record in this case purports to set out all the evidence and after a careful and attentive consideration thereof we are forcibly led to the conclusion that the conviction of the defendant for murder in the second degree was unwarranted and unsupported by the evidence and should not be permitted to stand. The evidence, aforesaid, is unusual, and almost without parallel, so far as the information and observation of the writer is concerned. As stated, the defendant, Evans Humphries, who admittedly shot and killed deceased, relied upon self-defense in that he fired the fatal shot in order to save his brother Charles from suffering death or great bodily harm at the hands of the deceased. Under the rules above announced and quoted, if Charles Humphries, the brother, was free from all fault in provoking or bringing on the difficulty by word or act, and if there was no reasonable mode of escape without apparently increasing his danger, and was at the time in imminent peril of losing his life

or suffering grievous bodily harm at the hands of the deceased, then, under such circumstances, the defendant would, under the law, have been justified in firing the shot that caused the death of the deceased. The evidence is unusual in that every witness, both for the state and for the defendant, who testified as to the difficulty, testified conclusively to the fact that Charles Humphries in no manner, by word or act, said or did anything which tended to provoke or bring on the difficulty. On this point there is no conflict in the evidence adduced upon the trial of this case. Without dispute or conflict it was affirmatively proven that the deceased was the aggressor. That he was a man who was accustomed to carrying a pistol. That he had but recently made several murderous threats against these two Humphries, coupled with vehement opprobrious words and abusive language threatening to kill them. These threats had been communicated to them. That upon the occasion of the difficulty deceased drove up in his automobile to a filling station where Charlie and Evans Humphries were present, alighted hurriedly from his car, and without word or act upon the part of Charlie Humphries, immediately "grabbed" him in the collar of his coat and shirt and began pulling him towards the garage door and said, "Come in here, damn you, I am going to settle with you." Further facts, in connection with the difficulty, are stated in brief for appellant, and are borne out by the record, and there appears to be no controversy as to these matters, to wit:

"There was no controversy whatever over the fact that the defendant and his brother, Charles Humphries, were wholly free from fault in bringing on the difficulty in the case. The state's own testimony shows that the deceased, Noojin, approached Charles Humphries, brother of the defendant, at or near a filling station in the town of Altoona, Etowah county, Alabama, and seized hold of him and pulled him back and forth in a threatening manner as if he intended to strike him, at the time asking him questions concerning some lies that had been told and Charles Humphries said, 'What lies?' and Noojin said, 'You know you done it,' and that he called Charles Humphries and the defendant, who was present, vile names several times, saying: 'Both of you God-damn-sons of bitches,' repeatedly. Not one word appears in this record to have been said by either the defendant or his brother during the struggle which ensued between Noojin and Charles Humphries, brother of the defendant, which was calculated to produce the difficulty or aggravate it or prolong it. Repeatedly Charles Humphries asked the deceased to go away and let him alone, that he did not want to have any difficulty with him. He struggled five or ten minutes back and forth with the deceased to get loose, the deceased holding him in the collar all the while in a threatening attitude. The deceased was a powerfully built and very strong man. Charles Humphries was a man of small stature, and deceased finally pulled him up against one of the pumps in the filling station, and Charles Humphries endeavored to pull himself loose, but failed. Finally the deceased, Noojin, made a move as if he was going to pull a pistol from his pocket, holding with his other hand the brother of defendant, and at that time the defendant standing near fired the fatal shot. Many of the witnesses testified to violent language used by the deceased while the struggle was going on. Not one of them testified to any abusive language or anything on the part of both the defendant and his brother calculated to antagonize the deceased.

"There was testimony of previous communicated and uncommunicated threats made by the deceased shortly before the killing, and during the struggle which finally resulted in the killing.

"The record shows that Noojin weighed 200 pounds, and neither the defendant nor his brother, either of them, weighed better than 130 or 140 pounds at best, both being frail men, and appellant insists that under the evidence the defendant could not retreat because he was being held all the while and never released until the shot was fired, and therefore the doctrine of retreat does not enter into the case, and besides having been assaulted without provocation he was under no duty to retreat under the circumstances. That he was in grave danger and bodily peril the evidence clearly and conclusively demonstrates. Some aspects of the evidence show that at the time the shot was fired the deceased was attempting to strike the brother of defendant and only the filling station pump prevented him from doing so, and under another aspect of the evidence, with one hand at the time was attempting apparently to draw a pistol and called to the defendant to 'get it,' thereby impliedly calling upon him to draw his pistol and fight it out."

From the foregoing, and also from other evidence of like import, it appears conclusively from the undisputed evidence (1) that defendant and his brother were wholly and entirely free from fault in provoking and bringing on the difficulty, and also without dispute in no manner contributed to the situation out of which the difficulty arose; (2) that, likewise, Charles Humphries could not retreat, as the undisputed evidence disclosed that from the beginning of the difficulty, throughout and until its ending, he was held in a vise like grip of the powerful man who was killed and tried, as the evidence disclosed he did try, he could not loosen the grip of the deceased, and hence his retreat was rendered impossible. The two foregoing elements of self-defense having been established without controversy, but one other question remained and that is the necessity of defendant to fire the shot resulting in the death of deceased. This we think was a question for the determination of the jury. Upon this theory the defendant requested the following charge, which was refused by the court, to wit:

"The court charges the jury if they believe the evidence the defendant has made out every element of self defense in the case which rests upon him to establish, and unless the State has satisfied you beyond all reasonable doubt and to a moral certainty that the defendant under all the circumstances used more force than was reasonably necessary, actual or apparent, then the jury should find the defendant not guilty."

It was error to refuse the foregoing charge, under the undisputed evidence in this case. The admissibility of testimony, materiality, competency, relevancy, and legal sufficiency is a matter of law for the court to determine, and upon the trial of a case where a fact in issue is fully proven without dispute or conflict, the court should so hold, if properly requested to do so. We think the case of Davis v. State, 214 Ala. 273, 107 So. 737, is conclusive upon the foregoing question.

Under the undisputed evidence in this case, charge 2 refused to defendant should have been given. Griffin v. State, 229 Ala. 482, 158 So. 316.

We are clear to the opinion that there was error in overruling defendant's motion for a new trial.

Other exceptions were reserved to numerous rulings of the court upon the admission of testimony, but we refrain from a detailed discussion of these several insistences as upon another trial said questions may not arise.

For the errors indicated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.