70 So.2d 282

**THOMPSON v. STATE.**

**6 Div. 777.**

Court of Appeals of Alabama.

Jan. 26, 1954.

No attorney marked.

Si Garrett, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted of the offense of assault with intent to murder and was sentenced to imprisonment in the penitentiary for two years.

The evidence for the State tended to show that about 7:30 on a Saturday night in February, 1953, Ernest Bayne, the assaulted party, with his wife and children, went to Eulas Dooley's barber shop at Snead, Alabama, to get Dooley to go to the movies with them.

While there, appellant and Alfred Lett came to the shop. Lett requested a hair tonic but was told by the proprietor the shop was closed. A quarrel ensued and Lett went outside followed closely by the others. Bayne and his wife testified appellant had left the shop before the argument started. Dooley testified defendant was standing at the window and went out the door behind Lett, but before Bayne left.

Bayne testified the difficulty took place between the door and some gasoline pumps, which were fifteen feet from the door. Immediately after Bayne stepped out the door Lett hit him in the stomach with an eight inch concrete block; Bayne then struck Lett in the stomach with his fist and defendant immediately ran up behind Bayne and cut him in the back. Bayne was 27 years old and weighed 200 pounds.

Mrs. Bayne testified she saw her husband hit Lett one time, knocking him against the gas tank. When Lett hit Bayne with the

concrete block Bayne bent over and defendant cut him across the back. Bayne had two drinks of homemade whiskey at 5 o'clock and she took one drink.

Dooley testified he told all the parties he was closing the shop and as they left he went out behind them. There was no argument on the outside.

After throwing the concrete block at Bayne Lett grabbed two Coca-Cola bottles from the window ledge and began hitting Bayne and continued to beat him on the head after he was cut, until this witness grabbed a bottle and ran between them and ordered Lett to desist.

These witnesses testified Bayne had no weapon of any kind and Mrs. Bayne denied she had made a statement after the difficulty that her husband had a knife.

Dr. Patton testified Bayne was admitted to his hospital with "a large laceration extending from his right upper arm traversing the entire length of the back. A secondary laceration began at the neck and right shoulder and entered the larger laceration about two or three centimeters to the right of the spine. The lacerations were very deep and completely divided the muscles of the area they traversed." Bayne remained in the hospital for six days, and was in a serious condition.

For the defense, Alfred Lett testified he was ordered out of the barber shop after he had asked for a hair cut but he didn't remember everything that was said in the shop. One word brought on another and Mrs. Bayne called him some ugly names. Then defendant said "let's go," and they started out. Bayne slapped defendant back over some chairs and witness turned and saw Bayne coming toward him with a knife. As he kept coming Lett backed on down right against the gas pump. Bayne struck at Lett twice with the knife. Lett threw a brick at Bayne and picked up two bottles and Dooley ran between them. He didn't see defendant strike Bayne; Dooley was between them at the time. Lett was 19 years old and weighed 150 pounds.

He admitted on cross examination he and Thompson had had two or three drinks apiece. His car was just off to the right of the pump. Bayne was just walking and never did run after him, and witness stated he had the whole wide-open space to get away from him. He wasn't telling the jury he couldn't go any further when he backed up to the pump; he could turn to his left and he could turn to his right and keep going. Bayne hit him one time, knocking him to his knees, but the blow must have been with his left hand, because he had the knife in his right hand. He didn't see Thompson cut Bayne because Dooley was between them.

Defendant testified he was twenty years old and weighed 140 pounds. He said he had had two or three drinks of home-brew, but no liquor. He rode to the barber shop with Lett but stopped outside to fill the radiator and when he went in Mrs. Bayne was calling Lett ugly names. Lett said if she were a man he would slap her and her husband took out his knife and opened it and slipped it back in his pocket and said, here is "a damn man." Defendant begged Bayne to put his knife up and told Lett to "come on and let's go."

They started out and Bayne slapped defendant back over a chair, then Bayne went out on Lett with his knife. The car was 10 or 12 feet from the gas pumps. When defendant got outside he saw Bayne striking at Lett with his knife as Lett was running backwards from him. He didn't see Lett throw anything but saw him pick up some bottles. That is when defendant cut Bayne. At that time Bayne was three or four feet from Lett, still swinging and striking at him, and Lett was right up by the side of the pumps but he didn't know whether he was up against them or not.

He testified on cross examination Lett was hollering but he didn't know what he was saying and he cut Bayne to stop him. Bayne was just walking pretty fast and Lett had plenty of space to get away from him if he had had time to turn. He cut Bayne with the knife introduced in evidence by the State. Lett didn't hit Bayne after he was cut. Defendant admitted he was mad and drunk.

Defendant, Lett and Joe Handy testified Mrs. Bayne stated in their presence a month before the trial that her husband had a knife during the fight.

The State presented rebuttal evidence tending to deny that either of the Baynes used profane language in the shop and that Ernest Bayne never struck defendant.

■ To authorize a conviction for assault with intent to murder the evidence must show an assault with an intent to take life, under circumstances which, if death had resulted, would have constituted murder. Horn v. State, 98 Ala. 23, 13 So. 329. Intent, which is an essential element of the offense, may be inferred by the jury from the character of the assault, the nature of the instrument used, the extent of the wounds inflicted and the presence or absence of excusing or palliating facts or circumstances. Meredith v. State, 60 Ala. 441; Brown v. State, 142 Ala. 287, 38 So. 268; Phillips v. State, 170 Ala. 5, 54 So. 111.

The plea of the defense was that defendant was not guilty because he was acting in defense of his friend, Alfred Lett.

■ The settled rule is that the right of one to defend another is co-extensive with the right of the other to defend himself and that one who invokes self defense in protection of another stands in the shoes of the one defended in respect of fault in bringing on the difficulty, and he cannot defend upon the ground that the protected party was in imminent peril of suffering death or grievous bodily harm and could not retreat, without increasing his peril, unless the latter could have defended upon that ground. Griffin v. State, 229 Ala. 482, 158 So. 316; Humphries v. State, 28 Ala. App. 159, 181 So. 309, certiorari denied 236 Ala. 104, 181 So. 312; Lovejoy v. State, 31 Ala.App. 244, 15 So.2d 300, certiorari denied 244 Ala. 637, 15 So.2d 303.

■ After a careful consideration of the evidence we are of the opinion the proof was sufficient to warrant the jury in finding the assault was made under such circumstances that if death had ensued it would have been murder.

Also, pretermitting a consideration of the inquiry as to whether or not the first two elements of self defense, enumerated above, existed as to Alfred Lett under the evidence, we are of the opinion that under the testimony of Lett and of the defendant himself the jury was warranted in finding that Lett had reasonable room and ground for escape.

In any event, the factual issues involved were for the determination of the jury and the evidence was ample, in our opinion, to sustain the verdict, therefore, there was no error in the court's action in refusing the affirmative charge, nor in overruling the motion for a new trial based on the ground the verdict was contrary to the preponderance of the evidence.

The requested written charges were affirmative in nature or were incorrect statements of the applicable law, and were properly refused.

We have not been favored with a brief by appellant's counsel, but we have carefully considered the record and find no reversible errors. The judgment of the trial court is ordered affirmed.

Affirmed.