DeCARLO, Judge.
Assault with intent to murder; fifteen years.
This is an indigent appeal from a conviction charging the appellant with assault with intent to murder Charles Holland.
The charges grew out of a shooting, which occurred at the Chicken Shack, a local night spot in Bessemer, Alabama. At the time of the shooting, the Chicken Shack was owned and operated by Enoch Oliver and his wife, Brenda.
Oliver testified that he knew Lorenzo Body and Charles Holland and that they were both in the Chicken Shack on September 6, 1974, about 6:00 P.M. Holland’s brothers, Roosevelt and Lewis Duncan were there and sometime later Oliver observed an argument involving Elmore Rutledge and Lewis Duncan. Earlier on the night in question Oliver saw a gun in Elmore Rutledge’s pocket, and at the time of the argument, saw Body playing pool. Sometime after Oliver broke up an argument between Duncan and Rutledge, he saw Body jerk the gun from Rutledge’s pocket and heard him say: “kill the Duncans and don’t argue with them.” According to Oliver, Body then moved back toward the pool table and Holland went to the front door. Body, at that point, shot Holland in the back and then shot Roosevelt Duncan when he “jumped up.” Body then snapped the gun at Oliver before he backed out the door. Two shots were fired before Body left the Chicken Shack and some other shots were fired after he went outside. Oliver maintained the only gun he saw was the one in Body’s hand, and that the shooting occurred about 11:00 P.M.
Oliver explained there was only one door in use at the Chicken Shack because the back door had been nailed shut. Further, he said that all the lights were on with the exception of one.
Charles Holland, the victim of the alleged assault, stated he went to the Chicken Shack after work about 5:00 or 5:30 P.M. Immediately after he arrived at the Chicken Shack, his uncle came to the door. Holland’s uncle was intoxicated at the time and on stumbling, a gun fell from his pocket. Holland took possession of the gun and then left the Chicken Shack. According to Holland, the gun was a .38 caliber pistol which was loaded with three or four shells.
Holland testified that about 8:30 P.M. he returned and gave the gun to Elmore Rutledge. He then went toward the front of the building and sat at one of the tables. According to Holland, he consumed three or four beers while at the Chicken Shack. After he had been sitting at a front table a short time he started toward the door and was shot in the back. Holland maintained he said nothing to Body on that evening and that he did not have a pistol.
During cross-examination, Holland explained he got up from the table and took about one step before he was shot. He did not know who shot him.
Elmore Rutledge testified that after he arrived at the Chicken Shack about 8:45 P.M., Charles Holland gave him a gun which he placed in his pocket with the handle protruding. Shortly afterwards, Rutledge had what he termed, a conversa *746 tion with Lewis Duncan. He maintained it was not an argument, but admitted Oliver, the owner of the Chicken Shack, spoke to them. According to Rutledge, Body then came over, jerked the gun from his pocket and shot Charles Holland. Rutledge did not recall hearing Body say anything at the time but explained that after the second shot, he ran out the door.
During cross-examination, Rutledge stated Holland was not sitting down at the time of the shooting because he had just returned from the dance floor. Rutledge admitted drinking beer that night and recalled that Holland had given him a pistol. Rutledge said that after he had gone outside and got into his car, he saw Body fire the pistol into the ground two times.
G. N. Franklin testified that he was employed by the Bessemer Police Department as a detective and on September 7, 1974, about 1:00 A.M., he was notified of the shooting at the Chicken Shack. Franklin went straight to the hospital where he learned one of the Duncans who had been shot, was dead. After leaving the hospital he talked with Enoch and Brenda Oliver and received written statements from them. Later in the day, about 3:00 P.M., he took two more statements, one from Joyce Davis and another from Elmore Rutledge. Approximately 9:00 P.M., he received a phone call from Lorenzo Body, who told Franklin that he wanted to surrender. On Franklin’s arrival at Body’s mother’s house, Body turned over to him the pistol that he had used during the shooting. Franklin said that they then left the house and went to the police headquarters where he informed Body of his rights. After Body said he understood the rights that were explained to him, he gave a statement that was later reduced to writing and signed by him.
During the trial, a hearing was held out of the presence of the jury to determine the voluntariness of the statement. At the completion of this hearing, counsel for appellant objected to the statement on the grounds that it was inflammatory because it dealt with the instance involving the shooting of Roosevelt Duncan. Counsel argued that it was not relevant to the case charging Body with the shooting of Charles Holland. Over appellant’s objections, the statement was read to the jury, and was later admitted into evidence.
In the statement Body said:
. . I was at the Chicken Shack [on September 6, 1974] ... I went there around 8 o’clock and drank some beer, and shot some pool. Around 11:30 to 12 o’clock my cousin ‘Crip’ [Elmore Rutledge] got into an argument with Roosevelt Duncan about his girl friend. Lewis Duncan then took up the argument, and pulled his gun out, and started waiving it around. Crip got his gun out too. They both cooled off, and put their guns away. A few minutes later I saw Crip pointing his finger in Roosevelt’s face, and I saw Lewis get up, so I ran over and pulled the gun out of Crips [sic] pocket, and began backing up. All 3 of the Duncans began coming toward me, so I began shooting. I shot Roosevelt [Duncan] first, and then Charles [Holland]. I snapped the gun at Lewis, and then I went out the door.” [Bracketed material added].
At the completion of Officer Franklin’s testimony the State rested and the counsel for the defendant made a motion to exclude the State’s evidence. He argued that the State failed to make a prima facie case of assault with intent to murder and there was no evidence connecting Body with the shooting of Holland.
The motion was overruled and the defense called Walter Davis as its first witness. He identified State’s exhibit number one, which was the .38 caliber nickel-plated revolver that Officer Franklin took from Body. Davis stated he was not related to Holland but was acquainted with him. He recalled it was at his house while he and Holland were standing at the door that Holland snatched the gun from his belt. Davis denied giving Holland permission to take the gun and said he was not intoxicated at the time.
On cross-examination, he stated that he lived about a block from the Chicken Shack *747 and admitted drinking heavily on the day of the incident.
Lorenzo Body took the stand in his own behalf and testified that on September 6, 1974, he was in the Chicken Shack and was playing pool when he observed an argument between Rutledge and Lewis Duncan. According to Body they were standing near the ice cream box and “waving a gun,” when Oliver, the owner of the Chicken Shack, went over, the argument stopped, but later the same night he saw Rutledge and Roosevelt Duncan arguing. Body said he then walked over to the table and told Rutledge not to argue and Roosevelt Duncan started arguing with him. He stated that when Roosevelt Duncan began to get up, he pulled the pistol from Rutledge’s pocket and started to back away. Body maintained that at that point Holland and Lewis Duncan came towards him and recalled that earlier that night he saw them with pistols.
During cross-examination, Body stated Holland was facing him at the time of the shooting and that he did not see anything in Holland’s hands. Body explained Holland had one of his hands behind his back and the other was extended toward him. He admitted snapping the pistol at Lewis Duncan after he shot Roosevelt Duncan and Holland.
Further, Body said he did not consider himself intoxicated at the time and denied making any statements concerning shooting or killing the Duncans.
Robert Lee Armstrong, Jr., the last witness called by the defense, testified that on Friday, September 6, 1974, he was in the Chicken Shack at the time of the shooting. He saw Rutledge with a pistol and Lewis Duncan with a .25 automatic. Further, he did not hear Holland say anything to Body that evening. On cross-examination, Armstrong stated Holland was going out the door when Body shot him while his back was to Body.
I
The appellant contends the trial court erred when it allowed the alleged victim to exhibit a scar on his back to the jury. Counsel argues that in the absence of medical testimony or some additional evidence, the testimony was prejudicial and his motion to exclude should have been granted.
The appellant recognizes that it has long been the law in Alabama, that in a prosecution for assault with intent to murder, evidence of the victim’s wounds and their severity is admissible. See: Patterson v. State, 34 Ala.App. 359, 39 So.2d 709; and Haney v. State, 20 Ala.App. 236, 101 So. 533.
We note that during the presentation of the testimony in issue that the appellant at no time made an objection. He now relies on his motion to exclude to preserve that point for error. In our judgment, the alleged error could only have been preserved by a timely objection.
In view of the foregoing, this court does not believe error was committed by permitting this testimony even if there had been a timely objection.
II
During cross-examination of Detective Franklin, counsel for appellant made the following inquiry concerning appellant’s demeanor while being questioned by the police:

“Q Did he try to be evasive about what happened?
“A No, sir.
“MR. COOK: I object to that.
“THE COURT: Sustained.
“MR. BOYCE: I think it’s a collective fact mood or state of mind like happiness or sadness, a witness has got to be able to draw certain conclusions about a person’s conduct, and I think the question of what he’s capable of objective fact on a part of a witness.
“THE COURT: Sustained.
“MR. BOYCE: Except.”
*748 As can be seen from the above quoted portion of the record the witness had already given a negative response before the State objected. Counsel for appellant maintains that the sustaining of the objection by the court had the same effect upon the jury as an instruction to disregard the witness’ answer. He insists that the trial court’s failure to overrule the State’s objection is a ground for reversal. Counsel argues that this was a shorthand rendition of fact, or a collection of facts which the witness had an opportunity to observe so as to form an opinion or conclusion.
In our opinion the question sought to elicit from the witness an uncommunicated intent of another, and for that reason the objection was properly sustained: Wallace v. State, 290 Ala. 201, 275 So.2d 634.
Ill
It is appellant’s contention that the trial court committed error when during its oral charge it referred to a written statement as a confession and did not define its elements.
We have examined the record and find in that portion of the oral charge, that has been questioned, the court stated:

“Introduced in this trial has been a confession, or a purported confession. . And it is up to the Court to determine the voluntariness of the confession before that confession can be introduced into evidence. And it has been introduced. Now, it’s up to you to weigh that confession along with the other evidence in the case. In order for it to have any weight or substance to it, you have to give it to it.
“In order for a confession to be taken and considered by you it must be voluntarily given, and the jury can take into account in weighing the alleged confession; that is, in determining the truthfulness of it, what weight they will give it and whether or not it was voluntarily given by the defendant.”
We have examined the judge’s instructions in the light of his entire oral charge and have found this was not an attempt on the court’s part to inject its judgment for that of the jury. It is clear that this was a term of reference rather than a designation and was not injurious to this appellant.
IV
After a careful consideration of all the evidence, it is our opinion that the proof was sufficient to warrant the jury’s finding the appellant guilty of assault with intent to murder. Thompson v. State, 37 Ala.App. 446, 70 So.2d 282.
No error appears in the record.
AFFIRMED.
All the Judges concur.