39 So.2d 709

### PATTERSON v. STATE.

8 Div. 673.

Court of Appeals of Alabama.

June 29, 1948.

As Extended March 8, 1949.

Rehearing Denied March 29, 1949.

Joe Starnes, Joe Starnes, Jr., and Starnes & Starnes, all of Guntersville, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

CARR, Judge.

This is an appeal from a conviction for the offense of assault with intent to murder. The alleged assaulted party is Robert Allen.

It appears that the two participants in the affray were drinking and, with some others, engaged in a dice game.

With reference to the assault the injured party testified: "Went out behind his place where they were shooting craps—shooting dice. I guess I lost four or five dollars. I quit. I said, I was drinking and I said, 'I am drunk,' and I laid down and went to sleep. When I woke up Bob was cutting on me."

Beyond question the prosecuting witness was severely and dangerously wounded. The attending physician so testified.

The defendant's version of the immediate difficulty was as follows:

"A. Well, me and the other boys left and went on to the house. We stayed there a while. I was with Bob in his car, I reckon it was his. I kept waiting thinking he would come on but he didn't come and I went back to get him and when I got there Bob was vomiting. I said what's the matter and when I asked him to get up and let's go home and Bob says, 'Where is Nanny,' that's his wife. I told him I didn't know. He said, 'Bob, don't lie. You have been to my house. I have been here a long time.' I said, 'I have not been. I can prove by Mr. Whitaker I have been at the store.' He got up and knocked me down and went to choking me and tried to get to his knife. We was struggling and fighting and I went to cutting just as fast as I could cut to get loose. He was on me and I cut him to get loose.

"Q. How long did you cut him? A. I don't know. I just cut as fast as I could.

"Q. Was it dark? A. Yes, sir.

"Q. Could you see where you were cutting? A. No, sir.

"Q. Was he on you at the time? A. Yes, sir.

"Q. When did you quit cutting? A. I may have stabbed him in the leg somewhere. I don't know. He hollered and I went one way and he went one way. I pulled out home; started to tell the law. I didn't know how bad he was cut."

Appellant's counsel in brief states: "At the opening of the trial Mr. Scruggs ordered the defendant to stand and read the indictment to him." The record does not substantiate this statement. As to this the record discloses: "The defendant was arraigned; Mr. Scruggs reading the indictment, while the defendant stood in the presence of the Jury, the defendant pleading not guilty to the charge."

This aside, there were no objections interposed to defendant's standing before the jury. The objections were directed to the remarks of counsel, and the court granted a motion to exclude the statement.

When the special prosecutor had concluded his opening statement, appellant's attorney moved for a mistrial because of certain assertions therein made. The court stated that he had excluded these remarks and denied the motion.

Counsel may be permitted to present to the jury in opening statement what he proposes and expects the evidence to show. The scope and latitude of this privilege must be controlled by the court in the exercise of his discretionary power. Pope v. State, 174 Ala. 63, 57 So. 245.

Of course, it is not contemplated that by the abuse of this privilege an attorney will inject into the proceedings immaterial and prejudicial matter. In the case at bar the court excluded that part of the opening remarks about which complaint was made. Clearly, there was not such an infraction of the rule as would require a cessation of the proceedings by granting the motion for a mistrial.

In brief of counsel this insistence is made. "The case should be reversed because of the numerous improper arguments, statements, side remarks, persistent efforts to introduce illegal testimony, intimations, and general conduct of the special counsel employed to assist the State —notwithstanding the fact the trial court in many instances sustained defendant's objections and granted his motions to exclude."

In approaching this question it should be noted that a motion for a new trial was not filed in the cause. Many of the complaints which are included under the above heading are not properly presented for our consideration. Review by appellate courts is limited to those matters upon which rulings in the court below were invoked. Lipscomb v. State, 32 Ala.

App. 623, 29 So.2d 145; Wetzel v. State, 33 Ala.App. 157, 30 So.2d 907.

It is urged that the State failed to prove venue.

Circuit Court Rule 35, Code 1940, Tit. 7 Appendix, was not observed. The general affirmative charge was not tendered; in fact, there are no refused charges in the record. The question of the insufficiency of the evidence to establish venue was not presented to the trial court. Shaver v. State, 250 Ala. 307, 34 So.2d 220.

The insistence is made that the trial court erred in permitting the State to introduce evidence of the commission of other offenses by the defendant.

It is pointed out in brief that in one instance this was done in the opening statement of the prosecuting attorney. We have heretofore treated this matter. Besides, it cannot be said that statement of counsel was a part of the evidence in the case.

The other references given in brief do not substantiate this insistence. In most instances the rulings of the court in this particular were favorable to appellant, and where this did not occur the objections are not supported by appropriate grounds.

It is also urged that a confession was introduced in evidence without showing it was voluntarily made. There are other insistences urged in brief, but the ground above stated is the only one based when objection was interposed. Every requirement of the rule here appertaining was met, and there is no semblance of merit in this position.

There was no error in permitting the State to have the assaulted party disrobe parts of his body and show the jury the scars of the injuries inflicted by the accused. It appears that every precaution was taken to avoid any indecencies, but, even so, the nature, extent, severity, location, and number of wounds on the body became a matter of material inquiry. 11 Alabama Digest, Homicide, ☞176.

The point is urged in brief that for aught appearing some of the injuries to the prosecuting witness may have been made at another time prior to the main event. The objection to the question did not raise this point.

We have considered all questions that deserve our treatment. We do not find any prejudicial error apparent on the record. It follows, therefore, that the judgment of the lower court is ordered affirmed.

Affirmed.

### Supplemental Opinion.

CARR, Judge.

On original submission of this case this court ordered an affirmance of the judgment of the court below. Subsequently this order was set aside and the cause was restored to the docket. The occasion for this procedure was to afford an opportunity to correct the original record.

As the record now appears the affirmative charge was tendered by the accused and refused by the court. We observe that there was a substantial compliance with Circuit Court Rule 35, Code 1940, Tit. 7 Appendix.

The question of venue is properly presented for our review.

Marshall County was divided into the Guntersville and Albertville Divisions of the Circuit Court by Act No. 10, Local Acts 1909, p. 14, as amended by Act No. 23, Local Acts 1919, p. 12. Section 2 of the latter act designates the territorial jurisdiction of the Albertville Division as follows:

"Said Court shall have original jurisdiction to try and determine all civil and criminal causes of action arising within the territory embraced in precincts four (4), five (5), thirteen (13), sixteen (16), eighteen (18), twenty (20), twenty-two (22), and all that portion of twenty-four (24) lying on Sand Mountain in Marshall County."

The case at bar was tried in the Guntersville Division.

The sheriff of the county testified that he found the alleged assaulted party in Beat 10 of Marshall County. Without dispute the assault occurred where the injured party was found.

It is true that the assaulted party testified that the offense was committed about

six miles across the river north of Guntersville and that this was not in the Guntersville Division. It is evidence that the witness was confused as to the exact purport of the question. He did not even know what beat it was in.

In any event, a point six miles north of the Tennessee River would bring the location within the Guntersville Division. Map of Minor Civil Divisions Precincts, State of Alabama, published in 1940 by the Bureau of Census, United States Department of Commerce, Map GEO–M–1–40.

This court takes judicial knowledge that Beat 10 of Marshall County is within the Guntersville Division of the Circuit Court of that county. Lagle v. State, 23 Ala.App. 400, 126 So. 181.

We reaffirm our holdings as heretofore expressed, and what we have here added will be taken as an extension of our original opinion.

The judgment of the circuit court is in all respects affirmed.

Affirmed.