228 So.2d 833

Marion L. HOOKS

v.

STATE.

2 Div. 6.

Court of Criminal Appeals of Alabama.

Nov. 25, 1969.

Lapsley & Berry, John A. Lockett, Jr., and William T. Faile, Selma, for appellant.

MacDonald Gallion, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charged murder in the first degree. Defendant was convicted of the offense of manslaughter in the first degree and was sentenced to the penitentiary for a term of ten years.

Charlie Jones, a Selma, Alabama, police officer, testified that on March 2, 1968, his attention was attracted to an ambulance parked at 431 Broad Street, in Selma; that he saw the ambulance attendants bringing a man out of the house on a stretcher. After looking at the man and talking with the attendants he went into the house where he saw the defendant walking around. There was nothing unusual about his appearance, except he might have been drinking a little, but was not intoxicated. He arrested defendant and charged him with killing Van Wilford White.

Larry Booker, an employee of Ambulance Service in Selma, testified he and Joe Friday were called to pick up the body of Van Wilford White. They were met at the door by defendant who, when asked what had happened, said "there had been a fight." They found a body lying on a bed and they took it first to Baptist Hospital and then to a funeral home.

D. W. Dailey, Jr., a cab driver, testified he received a call to go to a house on Broad Street, and arrived there about 9:00 or 9:30 A.M., on March 2, 1968. He went in the house and saw Marion Hooks and Van Wilford White fighting. Deceased was on the floor and defendant was "fight-

ing and kicking him." He saw defendant kick White on the chin two or three times.

Carlos L. Rabren, a State Toxicologist, testified he performed a post-mortem examination on the body of Van Wilford White and determined the cause of death as brain hemorrhage resulting from trauma to the neck and head.

For the defense, Dr. G. W. Singleton testified he examined the defendant at the jail the day after the killing and found he had a swollen, tender right shoulder. It was blue and had abrasions on it. Defendant also had various abrasions, bruises and contusions on his face, hands, arm and hip.

The evidence was sufficient to sustain the verdict. Defendant was not entitled to a new trial on the ground of motion the verdict is not sustained by the great preponderance of the evidence.

During defense counsel's opening statement the following occurred:

Mr. Faile: (Defense counsel)

"Your Honor will charge you that if you believe beyond a reasonable doubt—."

Mr. Asworth: (District attorney)

"Your Honor, we object to counsel arguing the case to the jury at this point."

The Court:

"Yes, Just state your case to the jury and you can argue the case later."

Mr. Faile: "We expect the evidence to show that the defendant—"

Mr. Ashworth "Your Honor, we object again to counsel arguing his case to the jury at this point."

The Court: "I sustain the objection, just state the facts at this time, Mr. Faile."

■■ The scope and extent of counsel's opening statement to the jury is a matter in the sound discretion of the trial court. His ruling will not be overturned unless an abuse of discretion is shown. Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692; Patterson v. State, 34 Ala.App. 359, 39 So.2d 709; Holifield v. State, 42 Ala.App. 209, 159 So.2d 65. We find no abuse of discretion here.

■ Charge 21 refused to defendant has been condemned as misleading. Wilson v. State, 243 Ala. 1, 8 So.2d 422; Brooks v. State, 34 Ala.App. 275, 38 So.2d 744.

Defendant's refused Charge 27 reads:

"The court charges the jury that if the evidence convinces you the witness W. D. Dailey is a man of bad character and unworthy of belief, then you may disregard his testimony altogether."

In Creel v. State, 23 Ala.App. 241, 124 So. 507, where the court stated that much testimony was offered by the State tending to impeach the general character and reputation of one of defendant's named witnesses, it was held not to be error to give such a charge at the request of the state.

In the instant case there was no testimony tending to impeach the character or reputation of the witness Dailey. The charge was abstract and its refusal was proper.

One ground of the motion for a new trial was that a juror took notes during the trial and during the court's instructions to the jury.

■ At the hearing on the motion the testimony tended to show that Ruth Floyd Brown, the foreman of the jury, took shorthand notes of the testimony during the trial, but that she did not read her notes to other jurors in the jury room. The jury requested further instruction as to the four degrees of unlawful homicide and Mrs. Brown took notes of the court's instructions. After they had returned to the jury room she read aloud from her notes the judge's definition of the degrees of unlawful homicide.

In Denson v. Stanley, 17 Ala.App. 198, 84 So. 770, the court held that the taking

**224**

of notes by a juror was not objectionable so long as it did not cause delay or undue consumption of time.

 Furthermore, the verdict of a jury may not be impeached by the testimony of members of the panel as to things said and done in the jury room. Huddleston v. State, 37 Ala.App. 57, 64 So.2d 90; Weatherspoon v. State, 34 Ala.App. 450, 40 So.2d 910; Brackin v. State, 31 Ala.App. 228, 14 So.2d 383.

In Gregg v. State, 43 Ala.App. 538, 195 So.2d 803, we held that on motion for a new trial it was proper for the jury to state that it was hung, but not as to whether on guilt or punishment, nor as to their numerical division. But we find no reversible error in the court's sustaining objections to questions to the jurors as to whether the jury was hung when it came back into the courtroom at 7:30 for further instructions.

Each member of the panel who testified at the hearing on the motion stated his verdict was based solely on the evidence from the witness stand. The motion for new trial was properly overruled.

Another ground of motion was that the court's supplemental charge tended to coerce the jury into a verdict. The remarks complained of are:

"I just wanted to talk to the jury a moment. It is now 7:30 or a little later, and if you think you can finish this case tonight, we'll wait on you, but we've got to come back in the morning and we've got a hard day ahead of us in the morning. But if this jury feels like you can arrive at a verdict within some reasonable time, we will wait on you, or we can simply put you up for the night. We can't let you go home under this type of case. So, we can furnish quarters for you to spend the night. Of course, we would have to have some place for the ladies to stay and some place for the men to stay. Now, if you think that you might, however, arrive at a verdict pretty soon, we will wait on you. You have the papers and apparently you are the foreman. Do you think that you might reach a verdict in a little while?"

The foreman asked that the jury be allowed to return for further deliberation and also requested further definitions of the elements of unlawful homicide. The record shows that the jury retired at 7:40 p. m. for further deliberation and returned the verdict at 8:15 p. m.

The language of the court was not coercive. Besides, no exception was reserved to these remarks of the trial judge.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.