The appellant was indicted and convicted for robbery. In accordance with the verdict and punishment fixed by the jury, judgment was entered and the appellant was sentenced to fifteen years in the penitentiary. The appellant has been represented at trial and on appeal by court appointed counsel.
At approximately 3:30 on the afternoon of June 22, 1976, the Creidman Clothing Store in Birmingham, Alabama, was robbed by two males. The owner of the store, Mr. Creidman, and a part-time clerk, Eunice McAllister, were the only people in the store when the two robbers entered. One of the men, later identified as the appellant, approached Mrs. McAllister and pretended to seek assistance in selecting a denim jacket. While Mrs. McAllister was looking for the proper jacket, the appellant pulled a pistol, placed it within inches of her neck, and demanded that she follow his instructions.
Mrs. McAllister screamed. Larry Bracey, the appellant's accomplice, grabbed Mr. Creidman and pushed him toward the back of the store. Mrs. McAllister and Mr. Creidman were placed in a bathroom with the door being shut and barricaded. While locked in the bathroom, Creidman heard a sound like a bell on the cash register. When Creidman and Mrs. McAllister got out of the room only minutes later, they found the cash register open and approximately seventy-five dollars missing. The police were called immediately and a description of the robbers was given at that time.
The day after the incident Sergeant John Barefield of the Birmingham Robbery Detail returned to the store and showed Creidman fifteen or twenty photographs. At this time, Creidman was unable to identify either of the robbers. However, the next day, Sergeant Barefield returned to the store with another group of pictures from which Creidman identified the appellant.
Some eight days later, a group of photographs was also shown to Mrs. McAllister. *Page 594 
She testified that she viewed about thirty-six photographs at this time and positively identified the appellant as one of the robbers. Officer Barefield made no comment and gave no assistance to either Mrs. McAllister or Mr. Creidman in the photographic identification. The identification of the appellant as one of the robbers was completely independent with no discussion between the two victims.
Both Creidman and McAllister testified to having seen the appellant and Bracey in the store on a prior occasion.
At the preliminary hearing, Mr. Creidman had some difficulty identifying the appellant. However Creidman testified that the preliminary hearing was very confusing and that he did not have a clear view of the defendant during the initial questioning. Once the appellant stood up, Creidman was able to make a positive identification.
In addition to the photographic identification made by Mrs. McAllister and Mr. Creidman, at trial both victims positively identified the appellant as one of the robbers.
Sergeant Barefield, in addition to corroborating the testimony of McAllister and Creidman, testified that he talked with the appellant on July 1st, while the appellant was incarcerated under an alias in the Jefferson County Jail. At that confrontation, Sergeant Barefield stated that the appellant told him that he should talk to Larry Bracey but professed his innocence and denied any knowledge of the robbery. Subsequently, Sergeant Barefield discovered that the appellant and Bracey were accomplices.
The defense presented the testimony of the court reporter who had reported the trial of the accomplice, Larry Bracey. The purpose of his testimony was to impeach the testimony of Mrs. McAllister and Creidman by showing conflicting statements which they had given previously concerning the certainty of their identification of the appellant at the preliminary hearing.
The custodian of records of the city jail testified that the appellant was in the city jail of Birmingham until June 16, 1976, some six days prior to the robbery in question.
 I
The initial contention of the appellant is that "the identification of the Defendant at a time (preliminary hearing) when he was handcuffed, sitting next to a co-defendant at counsel table, and no other blacks were present was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". This was the first face-to-face identification made of the appellant by Mr. Creidman.
On appeal, it is not contended that the photographic identification procedures employed in this case were unduly suggestive. The record indicates that they were conducted with due regard for the constitutional rights of the accused. The appellant objects to the identification procedure employed at the preliminary hearing.
Only after both parties had presented their case and rested did the appellant interpose any objection to suppress the evidence regarding the identification of the accused. There was no pretrial motion to suppress and no motion for a new trial. During the trial, there was no request by defense counsel for a hearing outside the presence of the jury to determine the admission of such identification testimony.
In the absence of an appropriate objection during trial, the issue of whether an in-court identification was tainted by pretrial identification procedures is not presented for review.United States v. Weeks, 487 F.2d 342, cert. denied,416 U.S. 942, 94 S.Ct. 1948, 40 L.Ed.2d 294 (1973); McGuff v. State,49 Ala. App. 88, 268 So.2d 868, cert. denied, 289 Ala. 746,268 So.2d 877 (1972); McCary v. State, 47 Ala. App. 630,259 So.2d 683 (1972); Allen v. State, 47 Ala. App. 566, 258 So.2d 909
(1972).
Nevertheless we have considered the identification procedures employed in the preliminary hearing and in light of the totality of the facts and those factors set out in Childers v.State, Ala.Cr.App., 339 So.2d 597, cert. denied, Ala.,339 So.2d 601 (1976). *Page 595 
It is our finding and conclusion that the identification procedures employed were not so impermissibly suggestive as to give rise to any substantial likelihood of irreparable misidentification. Thomas v. State, Ala.Cr.App.,332 So.2d 168, cert. denied, Ala., 332 So.2d 171 (1976).
 II
The appellant further objects to the action of the trial court in permitting the jury to carry pads and notes with them into the jury room. The trial judge overruled the objection of the appellant to this procedure and stated that he "had charged them that was for their own use".
This court in Hooks v. State, 45 Ala. App. 221, 228 So.2d 833
(1969) quoted the rule set out in Denson v. Stanley,17 Ala. App. 198, 84 So. 770 (1918) that the taking of notes by a juror is not objectionable so long as it does not cause delay or undue consumption of time. Here there was no showing that the notes were used by the jurors during their deliberations and no motion for a new trial was filed to protest this action. See Hooks, supra. In the absence of a showing that the notes were of an improper character or were prejudicial to the accused we will not presume error. 23A C.J.S. Criminal Law § 1367, page 972.
 III
In conclusion, the appellant submits that the testimony of Sergeant Barefield concerning the conversation he had with the appellant was inadmissible under the doctrine of Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Sergeant Barefield's testimony disclosed that he talked with the appellant on July 1st in the Jefferson County Jail. At that time, Barefield made no promise of reward, applied no threat or coercion and fully informed the appellant of his Miranda
rights. Sergeant Barefield asked the appellant if he would like to talk about the robbery. The appellant denied knowing anything about the robbery and stated that he "didn't want to make any kind of statements" to Sergeant Barefield. The sergeant continued to talk with the appellant. Barefield asked the appellant if he wanted to talk to him "about this particular incident that I had downtown, and that I was in the process of dropping a warrant on him for robbery".
 "I told him in particular where the robbery went down and what date and time and description of the two people involved. And I told him that before I made any decision, I had to get to the bottom of it. So we had a conversation at which time he told me that he didn't do the robbery, but that I needed to talk to, I believe it was Larry Bracey."
Sergeant Barefield subsequently discovered that Bracey and the appellant were "companions" and had been arrested on the same day.
The procedures mandated by Miranda v. Arizona, supra, apply only to confessions and statements by the accused incriminating himself. The appellant made no inculpatory statement in the nature of a confession during his conversation with Sergeant Barefield. Indeed, the appellant maintained his innocence and implicated another in the commission of the robbery. Such statements are not within the scope and coverage of the Miranda
rule requiring a proper predicate for a confession. Campbell v.State, Ala.Cr.App., 341 So.2d 735, cert. denied, Ala.,341 So.2d 742 (1977).
 "A statement to amount to a confession must be inculpatory and not exculpatory in its nature; exculpatory statements are not within the common law and statutory rules relating to confessions. A denial of guilt or a claim of innocence obviously is not a confession of guilt." 23 C.J.S., Criminal Law § 816b, page 156. See also Anderson v. State, 19 Ala. App. 606, 99 So. 778 (1924); 6 Alabama Digest, Criminal Law § 516.
Additionally we note that there was no objection made to the testimony of Sergeant Barefield until after both the state and the defendant had presented all of their evidence and rested their case. *Page 596 
For either of the reasons set forth the action of the trial court in permitting the testimony of Sergeant Barefield without objection was not error.
We have carefully studied the complete record and find no error adverse to the substantial or procedural rights of the appellant. Therefore the judgment of conviction is
AFFIRMED.
All Judges concur.