375 So.2d 514 (1979)
Ex parte Will Ed Gipson.
In re Will Ed GIPSON
v.
STATE.
78-97.
Supreme Court of Alabama.
August 24, 1979.
Rehearing Denied September 28, 1979.
*515 James M. Gaines, Huntsville, for petitioner.
Charles A. Graddick, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for respondent State.
PER CURIAM.
The issue, one of first impression in Alabama, is whether a grant of non-statutory immunity signed by an Assistant District Attorney is valid. We hold that, under the facts of this case, the grant of immunity was not valid, and affirm the decision of the Court of Criminal Appeals, 375 So.2d 504.
The background facts of this case are adequately stated in the opinion of the Court of Criminal Appeals or in the dissent of Mr. Justice Embry, and will not be restated.
We affirm the opinion of the Court of Criminal Appeals for the following reasons: (1) The Assistant District Attorney had no authority to enter into the agreement, (2) Gipson violated the terms and conditions of the agreement, even assuming the Assistant District Attorney had the authority to make the agreement, and (3) The State should not be estopped to assert the invalidity of the grant of immunity under the facts of this case.
AFFIRMED.
MADDOX and ALMON, JJ., concur.
TORBERT, C. J., and BLOODWORTH and BEATTY, JJ., concur specially.
FAULKNER, JONES, SHORES and EMBRY, JJ., dissent.
BLOODWORTH, Justice (concurring specially).
I concur in affirming this cause because Gipson violated the terms and conditions of the agreement. Had he been truthful, I think the State would be estopped to assert the invalidity of the purported grant of immunity.
TORBERT, C. J., concurs.
BEATTY, Justice (concurring specially):
To me the matter of immunity from state prosecution lies with the legislature. That body possesses the entire authority to enact the criminal laws and to declare who shall be subject to them. Alabama Constitution of 1901, Art. 3, § 42. It would be a curious result indeed if some district attorney could *516 effectively suspend those laws without any legislative guidance whatsoever. Absent any such legislative direction, the effect of a district attorney's grant of immunity, whether directly or by "estoppel," is to amend the legislature's declaration of responsibility for the commission of crime. The prosecutor already has discretion not to prosecute. See Cates, Can we Ignore Laws?Discretion Not to Prosecute. 14 Ala.Law Rev. 1 (1961). Additionally, the principle of inclusio unis est exclusio alterius may well apply in this instance because of Code of 1975, § 28-4-318 and § 13-7-29. Moreover, the distinction between "transactional" and "use" immunity is too tenuous for utilization by the parties to the arrangement without specific legislative direction and sanction. Absent such a sanction, no immunity should be permitted. If the district attorneys of this state perceive a need for the power to grant immunity as part of their official arsenal in law enforcement, history shows that they are not without influence in the legislature.
EMBRY, Justice (dissenting):
The issue, one of first impression in Alabama, is whether a grant of nonstatutory immunity by an assistant district attorney is valid. I would hold it is, and reverse the decision of the Court of Criminal Appeals.
William Ed "Joe" Mefford was murdered in the early morning of 7 February 1975. His body was found in the back waters of Wilson Dam, east of Florence, Alabama.
Two years subsequent to this murder, Roy Miller, an assistant district attorney for Madison County, and Jim Steward, an investigator for the Madison County Sheriff's Department, went to Niles, Michigan and talked with Will Ed Gipson, the petitioner in this case. At this time the investigator believed that another person, Will Ed Jones, was primarily responsible for the death of Joe Mefford and that petitioner had only played a minor role in the murder.
The following agreement was drafted by petitioner's Michigan attorney, Michael Marrs, and signed by the investigator and the assistant district attorney:
 "April 6, 1977
"TO: William Gipson
DATE OF BIRTH: November 4, 1933 SOCIAL SECURITY NUMBER: XXX-XX-XXXX
"Re: Murder of Joe Mefford
"We are hereby granting you immunity from prosecution for any offense which you have committed with regard to the circumstances surrounding the murder of one Joe Mefford of New Hope, Alabama in February 1975. This immunity includes but is not limited to, any offense relating to the death of Joe Mefford, the disposition of any firearms, the disposition of any automobiles or trucks, flight to avoid arrest or prosecution, and accessory after the fact to the murder of Joe Mefford. This immunity is transactional immunity and not use immunity. We represent to you, William Gipson, that we are authorized law enforcement officers of Madison County and the State of Alabama and have the authority to offer this grant of immunity to you."
The assistant district attorney stated that before he signed the immunity agreement petitioner's attorney and petitioner acknowledged that the following four conditions were placed on the agreement: (1) that the defendant tell the truth on a recorded statement, (2) that if further investigation revealed he wasn't telling the truth, he would be prosecuted as a principal, (3) that the defendant would return to take a polygraphic test, and (4) that he testify before the grand jury and at any other proceedings.
Gipson then told the investigator and the assistant district attorney that he knew nothing about the shooting other than that it had been his responsibility to dispose of the body.
Gipson returned to Madison County to testify before the grand jury regarding the involvement of Will Ed Jones in the murder. Before Gipson was allowed to testify, he was required to take a lie detector test. The results of the test indicated he was lying about every material point. When *517 confronted with these results, he stated he did the actual shooting of "Joe" Mefford but it was the result of a struggle and was an accident.
Gipson was then indicted and charged with first degree murder for killing "Joe" Mefford.
Gipson was convicted of murder in the second degree and the jury fixed his punishment at forty years in the penitentiary. He took an appeal to the Court of Criminal Appeals and that court affirmed the conviction and denied the application for rehearing.
Gipson raises the following issues: (1) whether the appellate court erred in holding that "* * * district attorneys are utterly without power to grant an accused immunity from arrest and prosecution for violating criminal laws," and (2) whether the appellate court erred in holding the trial court was not in error when it instructed Gipson's counsel that he could not continue to argue to the jury concerning Gipson's failure to testify.
In considering the first issue, it is necessary to understand the distinction between the two forms of immunity. "Transactional" and "use" immunity are defined in United States v. Cropper, 454 F.2d 215, 216 n. 1 (5th Cir. 1971):
"The phrase `use immunity' is shorthand used to describe a statute under which the grant of immunity to the witness guarantees only that his testimony (or other information derived from that testimony) will not be used against him in any future criminal prosecution. Use immunity statutes do not, however, prohibit future criminal prosecutions. If independent evidence of guilt is found by the government, the witness can be tried and convicted of the crime about which he was questioned under the grant of immunity. Transactional immunity statutes, on the other hand, grant an absolute immunity from any future prosecution for crimes arising from any transaction about which the witness is questioned and testifies.
Thus, in this case, transactional immunity afforded Gipson full immunity from prosecution for the offense to which his testimony related (in this case, statements made to the prosecuting attorney and investigator) and about which he was questioned.
The immunity granted Gipson was not authorized by statute. The question then is: whether the assistant district attorney is bound by a nonstatutory grant of immunity.
United States v. Paiva, 294 F.Supp. 742 (D.D.C.1969) involves a situation similar to this case. In that case defendant reached an agreement with the U. S. Attorney whereby he would plead guilty to four felonies, and cooperate with the Secret Service and F.B.I. in consideration of which the remaining cases against him would be dropped. There was one caveat in the agreement: he would not inform on possible accomplices. The Secret Service made several attempts to get the defendant to inform on other participants. Upon his failure to do so, the U. S. Attorney authorized that he be prosecuted for the original offenses. The U. S. Attorney contended that, where a promise of immunity has been made by agreement, such agreement could not serve as a bar to subsequent prosecution. The government stated that, according to the traditions of approvement and usage, his remedy would be to apply for executive pardon or raise it at the time of sentencing as a plea for pardon, citing United States v. Ford, 99 U.S. 594, 25 L.Ed. 399 (1878) (also referred to as the "whiskey cases"). The Paiva court responded:
"If stated more broadly, the Government's position, like the dicta of the cases on which it relies, contradicts more modern decisions of unquestioned validity.9 If, on the other hand, the narrow holding of those cases is subtracted, what remains is simply the statement that the prosecutor must at all times inform the defendant of his rights and must uphold the good faith responsibilities of his office. Accordingly, the Court finds the present situation so dissimilar from that of the *518 Whiskey Cases that they present no barrier to its decision."[1]
Thus, that court rejected the executive clemency alternative set out in the 1878 "whiskey cases."
In 1889, this court in Long v. State, 86 Ala. 36, 5 So. 443 (1889), citing the "whiskey cases," made the following statement:
"* * * When an accomplice is examined as a witness by the prosecutor, and fully and fairly discloses the guilt of himself and associate, there is an implied promise, as generally regarded, that he will not be prosecuted for the same offense. In such case, the prosecuting officer may decline to institute proceedings against him, or may discontinue them if already commenced. If this course is not pursued, the practice is to put the defendant on trial, and, if convicted, to recommend him to executive clemency. His right not to be prosecuted, or to a pardon, is equitable only, based on the pledged faith of the public. He cannot plead the facts in bar of an indictment, nor avail himself of them by motion to dismiss the prosecution.Whiskey Cases, 99 U.S. 594, 25 L.Ed. 399; State v. Graham, 41 N.J.L. 15. * * *"
The above quoted rationale from Long, is subject to the same invalidity as was the government's position in Paiva. The overriding factor in this case, and in Paiva, is that defendant and prosecutor reached an agreement whereby the defendant gave up his Fifth Amendment protection against self-incrimination based upon a grant of immunity which made the Fifth Amendment protection unnecessary.
A California appellate court in People v. Brunner, 32 Cal.App.3d 908, 108 Cal.Rptr. 501 (1973) relied on the contractual theory of estoppel to enforce the agreement made between the prosecutor and the defendant. In that case, Mary Brunner, a member of the Charles Manson gang was offered immunity from prosecution in exchange for her testimony relating to the murder of Gary Hinman. The prosecutor did have the statutory authority to grant her immunity, but failed to follow the statutory procedure to obtain it for her. Brunner testified before a grand jury and at trial; she later recanted her testimony and claimed her Fifth Amendment privilege. She was subsequently indicted for the Hinman murder. The trial court dismissed the indictment and permanently enjoined the State from prosecuting the defendant. The appellate court affirmed. In doing so it stated:
"Although section 1324 was not followed in this case, we conclude that the People are estopped from arguing noncompliance. It would be anomalous to permit the People, represented by the district attorney, to argue that an earlier agreement entered into by the district attorney was void for lack of compliance with a statute of whose existence the district attorney must have been aware. `[I]f a prosecutor, in the furtherance of justice, makes an agreement to withhold prosecution, the court may, upon proper showing, even in the absence of statute authority, honor the undertaking.' (State v. Reed (1969) 127 Vt. 532, 253 A.2d 227, 232; see also 1 Wharton's Criminal Law and Procedure, p. 396; Annot., 13 A.L. R.2d 1439.)
"The people argue that Brunner's proper remedy lies in the ancient proceeding of approvement, wherein the indictment stands but prosecution is delayed with the understanding that defendant has an equitable right to recommendation for pardon from the chief executive. (Whiskey Cases, 99 U.S. 594, 599-600, 25 L.Ed. 399, 401-402.) If it ever existed in American criminal procedure approvement has universally fallen into disuse. (King v. United States [203 F.2d 525] (8th Cir. 1953).) * * *
"Assuming their initial agreement was properly enforceable, the People contend that Brunner did not fulfill her part of the agreement and hence they are not bound to fulfill theirs. The argument runs: The people bargained for Brunner's *519 truthful testimony in proceedings arising from the Hinman murder; Brunner's testimony in the Manson trial contradicted her testimony in the Beausoleil trial; accordingly, at one of the trials she must have been untruthful; therefore, she did not give the bargained-for truthful testimony.
"We look on the matter somewhat differently, because in our opinion the People got substantially what they bargained for. The purpose of their bargain was to secure murder convictions of the most reprehensible of the Hinman killers. Brunner testified at the Beausoleil trial, and Beausoleil was convicted. She testified at the Manson trial, was impeached by her Beausoleil trial testimony, and Manson was convicted. The People, however, argue that convictions are immaterial, pointing out they are not permitted to bargain for results but only for full and truthful testimony (People v. Walther, 27 Cal.App.2d 583, 591, 81 P.2d 452; People v. Green, 102 Cal.App.2d 831, 834-839, 228 P.2d 867; People v. Lyons, 50 Cal.2d 245, 265-266, 324 P.2d 556.) While it is indisputable that the People can bargain only for testimony and not for results, the issue here is not the validity of the bargain but the extent of a party's performance under the bargain. Performance can be measured, at least in part, by results. Since the People got their hoped-for results through the use of Brunner's testimony, we conclude, albeit somewhat pragmatically, that enough of the bargain was kept to make it operative. We note that validation of the grant of immunity from prosecution for murder does not bar prosecution for perjury and that the grand jury has indicted Brunner on four counts of perjury arising out of her testimony in these cases."
Thus, the court in Brunner holds, despite the fact the grant of immunity was a nonstatutory one, the State was estopped from prosecuting based upon defendant's reliance upon the promise. The rationale also applies to this case. Even though the assistant district attorney was without statutory authority to grant Gipson immunity, he is estopped from prosecuting him because Gipson relied upon the promise.
With regard to the question of whether Gipson fulfilled his part of the bargain I note the written agreement did not place any terms or conditions upon him. It simply stated "We are hereby granting you immunity * * *." After the agreement was executed, Gipson did willingly return to Alabama in order to testify before the grand jury; furthermore, he did take a lie detector test and give a statement, which the State now accepts as the truth. I, therefore, conclude that Gipson sufficiently fulfilled his part of the bargain.
In this case, the public faith was pledged to Gipson that he would be free from prosecution, therefore, I say the State is estopped from prosecuting him.
FAULKNER, JONES and SHORES, JJ., concur.
NOTES
[1] In footnote 9 the court referred to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Briscoe v. United States, 129 U.S.App.D.C. 146, 391 F.2d 984 (1968).