The defendant was indicted and convicted for robbery. Sentence was life imprisonment.
 I
Initially, the defendant alleges that the trial court erred in refusing to suppress the victim's in-court identification of the defendant. A review of the totality of the circumstances shows the pretrial identification to have been reliable and not in violation of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401 (1972).
At approximately 7:45 on the morning of June 9, 1979, Ms. Linda Diane Gossett drove her automobile into the parking lot of the Mobile Check Exchange. She observed the defendant walking down the street. Ms. Gossett stated, "I noticed him in the beginning . . . because when I turned in the parking lot he was so close to my car." When she started to get out of her car, Ms. Gossett noticed that the defendant had changed directions and was coming back through the parking lot. She thought that this was "kind of strange." She spoke to the defendant and went to open the door to the Exchange. As she did, the defendant came up behind her and "pulled" a gun. He told her to open the office door, give him the money and that if anything happened he would "blow her brains out." Ms. Gossett then gave the defendant the five thousand dollars which was in the office safe.
The defendant was not wearing a mask and during the ten or fifteen minutes the robbery took Ms. Gossett looked at his face. She saw him "twice outside face to face" before she entered the Exchange. She was able to give a full description of the defendant to the police who arrived "right after the robbery." Within two hours after the robbery, Ms. Gossett had selected the defendant's picture from a "book" at police headquarters. She looked through about one and one-half books before selecting the defendant's picture. Each book contained approximately 100 black and white pictures. No one told her whom to select and she had no help from anyone in looking through the books.
Ms. Gossett was positive in her identification of the defendant.
 "[W]hen I came to the picture I knew definitely it was him and there was no doubt in my mind."
* * * * * *
 "I sat at a table right by myself with no help from anybody and looked at books and looked at books until I came across his picture and I knew definitely that it was him and I know today it was him. There is no doubt in my mind." *Page 1268 
Ms. Gossett's identification of the defendant was based in some part on the bridge of the defendant's nose.
Although Ms. Gossett stated that she became "hysterical" after the robbery and despite the fact that defense counsel placed emphasis on her allegedly erroneous description of the defendant's facial hair, the facts show that the pretrial identification procedure employed here was not suggestive and did not create the likelihood of irreparable mistaken identification. Childers v. State, 339 So.2d 597 (Ala.Cr.App.), cert. denied, 339 So.2d 601 (Ala. 1978). "The mere fact that a witness was shown photographs does not establish suggestiveness." Childers, 339 So.2d at 599; Henderson v.State, 373 So.2d 1218 (Ala.Cr.App.), cert. denied,373 So.2d 1221 (Ala. 1979). Here there was not the usual photographic "display" or "lineup" in which the officer gives the victim a preselected group of photographs.
We have carefully and fully considered the facts of this case with the factors which must be considered when evaluating the likelihood of misidentification. Neil, supra. We are clear in our conclusion that the trial judge did not commit error in refusing to suppress Ms. Gossett's in-court identification of the defendant.
The defendant also contends that the in-court identification should have been suppressed because he was not given a lineup despite the fact that he allegedly requested one after his arrest. A person accused of crime does not have a constitutional right to be identified by the victim in some type of pretrial identification procedure. The fact that the defendant requested but did not receive a lineup does not constitute a denial of due process of law.
 II
The defendant alleges that he was denied adequate representation of counsel because his trial counsel, who had been retained by the defendant's family and who represented the defendant at trial even though the trial judge had appointed different counsel for the defendant, failed to take certain "actions". In particular, the defendant contends that his counsel failed to adequately represent him by:
 "(1) failing to submit certain items of evidence, i.e., a motion for a lineup prior to the preliminary hearing held in District Court; (2) refusing to allow the Defendant to take the stand and testifying in his own behalf; (3) refusing to file a motion in limine to protect the Defendant from cross examination regarding his past record; (4) refusing to subpoena or to ask for a continuance for Detective Rigsby, who could testify that the Defendant had been denied a lineup; (5) defense counsel took no corrective action regarding the Defendant being seen in handcuffs by the jurors; (6) the Defendant's counsel failed to poll the jury; (7) the Defense counsel failed and refused to submit written charges and the Defendant had to have his girlfriend prepare them."
These allegations were made by the defendant immediately prior to his sentencing. In response to the defendant's remarks, trial counsel responded:
 "Judge, I'd like to make a statement too for the record. Mr. McKinnis just answered his own question. He doesn't know the law. He's probably the most difficult client I've ever worked with. His parents retained me and all these frivolous motions that he was to file, I did not feel like that would help him. And I advised him not to take the stand, I didn't force him not to. He could have walked up there and taken the stand if he'd wanted to."
* * * * * *
 "Detective Rigsby is seriously ill in the hospital and I do not feel like his testimony would have aided us at all."
Initially we note that none of these charges is properly supported by the record. The only evidence to validate the substance of these charges is the defendant's statements in response to the judge's asking him if he had anything to say why sentence should not be pronounced on him and the *Page 1269 
response made by defense counsel to the defendant's allegations.
A motion for a new trial was filed by counsel different from trial counsel. A hearing was held on this motion yet the record is silent as to the occurrences at that hearing. Apparently there was no evidence presented to buttress the defendant's allegations and it does not appear that the defendant even testified in support of his claims. For this reason we simply have nothing to review in this regard. The overruling of a motion for a new trial is not error where there was no evidence offered in support of the motion. Naugher v. State, 241 Ala. 91, 1 So.2d 294 (1941).
However, even if we assume that the trial judge had knowledge of all the facts surrounding all the incidents complained of by the defendant, so that the introduction of additional evidence was unnecessary, Taylor v. State, 222 Ala. 140, 131 So. 236
(1930), we are of the opinion that the motion for new trial was still due to be denied.
While the courts of this State have retained the much criticized "farce or mockery" test of effective representation by counsel, Lewis v. State, 367 So.2d 542 (Ala.Cr.App.), cert. denied, Ex parte Lewis, 367 So.2d 547 (Ala. 1978), Harris v.State, 367 So.2d 524 (Ala.Cr.App.), cert. denied, Ex parteHarris, 367 So.2d 534 (Ala. 1978), the United States Court of Appeals for the Fifth Circuit has adopted a standard of counsel "reasonably likely to render and rendering reasonably effective assistance" as a test of effective representation by counsel. See Annot., 26 A.L.R.Fed. 218, 229 (1976). Even applying this stricter standard, we find no evidence that the defendant has been denied the effective assistance of counsel.
To meet the constitutional standards of effective assistance of counsel, defense counsel need not possess "druidic magical powers to produce an acquittal." Carmack v. State, 41 Ala. App. 552, 141 So.2d 208, cert. denied, 273 Ala. 705, 141 So.2d 209
(1962).
 "The right to effective assistance of counsel does not mean that counsel must be brilliant, infallible, errorless, or successful. An issue of lack of effective assistance of counsel is not raised by a mere general criticism of the attorney's conduct of the defense, or by disappointment or dissatisfaction with the result or by lack of success."
* * * * * *
 "[T]he inadequacy of counsel is not established by his failure to claim every possible legal advantage for his client. While counsel is expected to contest every step of the case, he may make concessions warranted by the facts. Counsel is not obligated to advance points or arguments that are specious or frivolous, or to submit evidence which he believes is inadmissible or immaterial; nor is he called on to manufacture evidence."
* * * * * *
 "Counsel for accused is vested with broad latitude in the conduct of the defense and he is not to be adjudged incompetent and his client deemed denied effective assistance of counsel by reason of the commission of what, in retrospect, appear to be errors of judgment. Mere errors, omissions, or mistakes by counsel do not establish a lack of effective representation by counsel. Trial strategy, even though unsuccessful, is an inadequate basis for an attack on the competency of counsel, and this rule has been applied where counsel refrained from cross examination or from calling certain witnesses, or where counsel decided that accused should not take the stand."
23 C.J.S. Criminal Law, § 982 (8) (1961).
At trial, counsel was diligent and aggressive in his cross examination of prosecution witnesses and in his presentation of a defense. Prior to trial he filed a motion to produce and a motion to suppress. At trial he moved to exclude the State's evidence and made other objections.
We have examined every potential infringement of the defendant's right to effective counsel with the most exacting scrutiny. Zuck v. State of Alabama, 588 F.2d 436 (5th Cir. 1979). The defendant's own *Page 1270 
statements in the record reveal that either his arguments and contentions are totally without merit or that the complained of failures and inactions on the part of his trial attorney do not amount to ineffective assistance of counsel.[1] No doubt, after the jury returned the guilty verdict, the defendant was greatly dissatisfied with trial counsel. However, this is a far cry from a denial of the constitutional right to the effective assistance of counsel.
We have searched the record for prejudicial error as required by law, Alabama Code 1975, Section 12-22-240, and have found none. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] "I'm alleging insufficient, ineffective and negligent assistance of counsel as far as the way Mr. Stephens handled my defense because Mr. Stephens put forth the alibi defense and he knew and I knew that I didn't have an alibi defense cause I was at home, alone, asleep in my bed. There was no one that could say, `I saw Ollie.' People say, `I saw his car', but that's not Ollie. And Mr. Stephens put forth the alibi defense knowing there's not a single witness to support such a defense. Therefore, I feel that really I've had very insufficient, and negligent, and ineffective assistance of counsel here."