421 So.2d 1334 (1982)
Willie Earl HALL
v.
STATE.
5 Div. 600.
Court of Criminal Appeals of Alabama.
June 29, 1982.
Rehearing Denied July 27, 1982.
Certiorari Denied, November 19, 1982.
*1335 John Percy Oliver, II, of Oliver & Sims, Dadeville, for appellant.
Charles A. Graddick, Atty. Gen., and William D. Little, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 81-967.
HARRIS, Presiding Judge.
Appellant was indicted by the Fall 1980 term of the Lee County Grand Jury for the May 27, 1980, theft of one General truck tire valued at $110 from Tiger Motor Company in Auburn in violation of Ala.Code § 13A-8-4 (Supp.1981). On October 23, 1980, appellant was tried and convicted of second degree theft of property as charged. The State invoked the provisions of the Habitual Felony Offender Act, Ala.Code § 13A-5-9 (Supp.1981), and, at a subsequent sentencing hearing, properly proved three prior felony convictions. The trial court sentenced appellant to twenty-five years' imprisonment. Throughout the trial proceedings, appellant was represented by retained counsel. On appeal, he was found to be indigent and provided appellate counsel and a free transcript.
Auburn Police Officer Gary Black testified that, in the early morning hours of May 27,1980, he was on patrol and drove by Tiger Motor Company. He noticed a 1975 white-over-red Cadillac parked in the new truck lot. As Officer Black pulled in the lot the vehicle quickly exited. Officer Black followed the car for a short distance before turning on his blue lights, at which time the Cadillac accelerated. Officer Black reported the car's license plate number to police headquarters and chased the car about three-quarters of a mile into a trailer park. The car became entangled in some clotheslines and trees and stopped. Officer Black was approximately forty to fifty feet behind the car when it stopped. Officer Black *1336 stopped seconds later and pursued the driver, who had taken the keys from the car, exited it, and fled on foot. Officer Black testified that his headlights were on and shining in the direction of the Cadillac. He did not notice any street lights being on. Officer Black stated that it was becoming daylight when he observed the driver of the Cadillac. He described the driver as wearing blue jeans, a plaid-type shirt, and a light colored golfer's hat. He saw the profile of the driver as he exited the Cadillac. Officer Black pursued the individual on foot but could not apprehend him. He returned to the Cadillac and saw a new tire and rim on the back seat. About thirty minutes later, Officer Black relinquished control of the car to Auburn police detective Bill Gaines. During his testimony, Officer Black, without objection, twice identified appellant as the driver of the Cadillac.
On June 12,1980, while Officer Black was on duty at Auburn Police Headquarters, appellant was brought into the booking room. Officer Black identified appellant as the person he had seen on May 27. He testified that Detective Gaines had told him that appellant had been arrested for theft of tires but was unsure whether he was told such prior to or after identifying appellant. Officer Black's June 12 testimony concerning the identification was received into evidence without objection.
On cross-examination, Officer Black was, inter alia, thoroughly questioned concerning his identification of appellant.
Alabama Bureau of Investigation automobile theft investigator Howard Yeager testified that, on May 27, 1980, he was at the Auburn police headquarters on an unrelated matter and observed the 1975 Cadillac previously impounded. Investigator Yeager had previously had an occasion to check the ownership and tag registration of the car. He testified that the license plate was registered in appellant's name while the vehicle title was in the names of Willie Earl and Barbara Howard.
Auburn Police detective Bill Gaines testified that, around 5:20 a.m. on May 27, 1980, he arrived on the scene of the abandoned Cadillac and took control of it. He observed the new General tire on the back seat. Detective Gaines had the car towed to police headquarters where he placed the tire in the evidence room. Later that morning, Mr. Jody Hill of Tiger Motor Company identified the tire as belonging to the Company.
Mr. Jody Hill, sales representative for Tiger Motor Company, testified that, on May 27 he checked all the vehicles on the car lot and found a truck parked in the lot, where the Cadillac had earlier been observed by Officer Black, with its spare tire missing. The spare was a P195X15 General black sidewall tire mounted on a rim. Mr. Hill testified that he identified a tire at the police station and it was identical to the one missing from the truck. He valued the tire at about $110.
Mr. Hill's testimony concluded presentation of the State's case. Appellant moved to exclude the State's evidence on the ground that "proof has not been beyond a reasonable doubt." Appellant's motion was denied. Appellant then rested, presenting no evidence to contradict or rebut that of the State.
Appellant contends that the trial court erred in denying his motion to exclude. Taken in its most favorable light, the State's evidence sufficiently established a prima facie case of second degree theft of property. Ala.Code § 13A-8-4(a) (Supp. 1981). The evidence leaves no doubt as to the identity of the thief. Consequently, the trial court properly overruled appellant's motion to exclude and his motion for a new trial on this ground.
Appellant contends that the trial court erred in admitting his in-court identification by Officer Black as it was tainted by an unduly suggestive one man show-up.
The record reflects that appellant did not challenge the identification through any pre-trial motion or by an oral motion at trial. Neither was the issue raised by any post-trial motion. Further, appellant did not object to either the in-court or extrajudicial identification made by Officer Black. *1337 Thus, under these circumstances nothing is presented for review. Dejnozka v. State, 399 So.2d 950 (Ala.Cr.App.1981); Watson v. State, 398 So.2d 320 (Ala.Cr.App.1980), cert. denied, 398 So.2d 332 (Ala.1981); Glover v. State, 347 So.2d 592 (Ala.Cr.App.1977); and cases cited therein.
Appellant contends that the State, in its closing argument, impermissibly commented upon his failure to testify. During the course of the trial, appellant thoroughly cross-examined the State's witnesses but presented no evidence and did not testify.
Our search of the record discloses five instances where appellant objected to the State's closing argument. We quote those objected-to portions below:

1.
"Mr. Cottle (defense attorney) wants to argue to you that we've got doubts in this case about the identification. There is not a shred of evidence in this case that would place any doubt at all on the identity of this man as being the man that got out of that car, not a shred of evidence. Nobody has come in here and put him anywhere else. (Parenthetical added).

2.
"MR. HARPER: (Assistant District Attorney) Mr. Cottle gets up before you and he says, `Ladies and gentlemen, the reason that the defendant didn't take the stand in this case is because I didn't want him to be cross-examined by an experienced prosecutor.'
"That's what he tells you. He gives me more credit than I deserve. Cross-examination is not some trial by fire. Cross-examination is merely a tool. It is merely questions being asked of somebody to test whether or not they are telling you the truth. That is all cross-examination is. A man comes into Court and he tells the truth, he has nothing at all  (Parenthetical added).

3.
"MR. HARPER: A man has nothing at all to fear when he comes into Court and tells the truth on cross-examination. Not a thing. Because when you tell the truth, you don't have to remember things. You don't have to think of those stories that you made up in your mind. All you have to do is just remember it like it was. That's all you have to do.

4.
"I wonder if the reason for not putting this man on the stand is because he is afraid of cross-examination or it's because he really can't explain why he was out there in that Cadillac that morning, stealing that tire.
"MR. COTTLE: Objection.
"THE COURT: Overruled.
"MR. HARPER: I wonder if that's the reason. Unfortunately, you all and me and the Judge will never know. We'll never know.

5.
"But when his attorney gets up and tells you that there's a doubt about identification, that's a little bit misleading, because there is not a shred, not a tiny little bit of evidence indicating anything other than what that officer told you to be true. His evidence is totally unrebutted, totally unrebutted, and he has absolutely no reason to come in here and tell you anything other than the truth. The judge is going to charge you in a few minutes on a reasonable doubt, and I think what he is going to tell you is that you can't convict this man and you can't convict any man unless you are satisfied of his guilt beyond a reasonable doubt, and that's true. But he's not going to tell you that you have to prove a case to a mathematical certainty. The State of Alabama doesn't have that burden. If we, as prosecutors, had to come in here and prove cases to a mathematical certainty, then we'd just close this building down, ladies and gentlemen, because that's not going to be possible in about 95 percent of the cases. `Reasonable doubt' means just that, reasonable. Is there a reasonable doubt? Is *1338 there any doubt at all in this case? Any evidence to the contrary that this man wasn't out there and took that tire?"
A review of the closing argument made by appellant's counsel, see Whitt v. State, 370 So.2d 736 (Ala.1979), reveals that comments 2, 3, and 4 quoted above were replies in kind to explanations made by appellant's counsel as to why appellant did not testify. Appellant's counsel explained in great depth and detail the reasons for appellant's absence from the witness stand, emphasizing the fact that if appellant testified he would be subjected to cross-examination by the State. Thus, comments 2, 3, and 4 were made in rebuttal to the earlier statements by appellant's counsel. In this context we find no error to the substantial rights of appellant. Pittman v. State, 153 Ala. 1, 45 So. 245 (1907); Gipson v. State, 375 So.2d 504 (Ala.Crim.App.1978), affirmed, 375 So.2d 514 (Ala.1979); See generally Tillis v. State, 292 Ala. 521, 296 So.2d 892 (1974); Gibson v. State, 347 So.2d 576 (Ala.Cr.App.1977).
During his closing argument, appellant's counsel argued extensively that the identification of appellant made by Officer Black should be closely scrutinized. However, he made clear that the evidence adduced at trial concerning the identification was undisputed. The thrust of the State's comments 1 and 5, quoted above, was to illustrate that the State's evidence was uncontradicted as well as to rebut appellant's argument as to the identification evidence. Having pleaded not guilty, appellant denied committing the crime. Therefore, he could have produced witnesses other than himself to establish his innocence. In fact, at his motion for a new trial appellant attempted such. Consequently, comments 1 and 5, when reviewed in light of what transpired at trial, refer merely to the uncontradicted nature of the State's evidence and thus do not violate the rule prohibiting comment upon a defendant's failure to testify. Jackson v. State, 414 So.2d 1014 (Ala.Cr.App. 1982); Griffin v. State, 393 So.2d 523 (Ala. Cr.App.1981).
Lastly, appellant contends that he was denied effective assistance of counsel by his trial counsel's closing comments explaining his reasons for appellant's not testifying. A review of the record reveals that the proceedings of which appellant complains were not reduced to a farce, sham, or mockery of justice. Further, no denial of the "reasonably effective" assistance of counsel standard adopted by the United States Court of Appeals for the Fifth Circuit occurred. Sheehan v. State, 411 So.2d 824 (Ala.Cr.App.1981); McKinnis v. State, 392 So.2d 1266 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1270 (Ala.1981). The decision whether vel non to explain appellant's absence from the witness stand was a matter of trial strategy. In the absence of a clear showing of improper or inadequate representation, such matters must be left to the judgment of trial counsel. McKinnis, supra; Bridges v. State, 391 So.2d 1086 (Ala.Cr.App.1980).
Consequently, we find no basis for a claim of inadequacy of representation.
Examination of appellant's contentions on appeal reveals no errors prejudicial to his substantial rights. This cause is hereby due to be affirmed.
AFFIRMED.
All the Judges concur.