ADAMS, Justice.
We granted certiorari in this case to determine the validity of a purported grant of immunity from prosecution signed by the district attorney, an assistant attorney general, and the foreman of the grand jury, and implicitly approved by the circuit court. Subsumed in the above question is the question of whether respondent Larry Roberts can be compelled to testify before the grand jury based upon a valid grant of immunity.
The events leading up to the filing of this petition began when Larry Roberts, an employee of the Alabama State Docks, was subpoenaed to appear and testify as a witness before the Baldwin County Grand Jury. Roberts was ordered to appear on July 25, 1985, to give testimony regarding alleged criminal activities at the state docks. Roberts appeared with counsel and filed a motion for a protective order, which motion was set for hearing. In the motion, Roberts sought to have the grand jury proceedings recorded in order to ensure that his constitutional right against self-incrimination would not be violated.
In the hearing the assistant attorney general attempted to elicit testimony from Roberts which might later have been used against him by the State. Roberts’s counsel objected to the questions and advised his client that he had the right to remain silent. The hearing was interrupted so that the court could have an in camera conference with both parties. During the conference, the court asked the prosecuting attorney if he intended to grant Roberts immunity from prosecution in return for his truthful testimony before the grand jury, and the prosecuting attorney said that this was his intent. Roberts was then called to answer questions before the grand jury, at which time he was offered immunity. Upon advice of counsel, however, Roberts refused to waive his right not to testify when his answers might tend to incriminate him. The prosecuting attorney urged that since Roberts had been given immunity from prosecution and still refused to testify, he should be ordered by the circuit court to answer all questions posed to him. In compliance with the State’s request, the court then ordered Roberts to answer all questions or be held in contempt of court and imprisoned until he did answer them. This order of the court prompted counsel for Roberts to move for a continuance or a temporary restraining order to allow him time to have a transcript of the proceedings prepared and to file a petition for a writ of mandamus with the Court of Criminal Appeals. In August 1985, the Court of Criminal Appeals vacated the circuit court’s order directing Roberts to answer all questions asked him, 479 So.2d 87. That court also prohibited any interested parties from compelling Roberts to give potentially incriminating testimony before any grand jury against his will.
As a result of the Court of Criminal Appeals’ holding, the State filed a petition for a writ of certiorari, and we granted the writ. The ultimate issue for our resolution in this case is whether Roberts can be compelled to testify before the grand jury based upon a grant of immunity from prosecution. Before making this determination, however, we focus our attention on the validity of grants of immunity from prosecution in general in Alabama.
Authority to grant immunity in the federal courts is provided by congressional act. 18 U.S.C. § 6002 (1979). Many states have similarly dealt with the problem by legislative act. Alabama is one of a number of states that do not have a general statute authorizing prosecuting attorneys to grant immunity from prosecution. Thus, this case involves the validity of a nonstatutory grant of immunity.
*446 Non-statutory grants of immunity have been the focus of discussion in numerous cases before this Court and the Court of Criminal Appeals. See Gipson v. State, 375 So.2d 514 (Ala.1979); Ex parte Johnsey, 384 So.2d 1189 (Ala.Crim.App.1980), cert. denied, 384 So.2d 1191 (Ala.1980); Higdon v. State, 367 So.2d 991 (Ala.Crim.App.1979). In many of these cases, the holding of the appellate court has been limited to the particular facts of the case at hand and, thus, a general rule of law has not developed which could be applied in all non-statutory immunity cases in Alabama. As a result, cases arise wherein we are called upon to determine, as in the case sub judice, whether a particular grant of immunity is valid. In order to improve upon the method by which we deal with these cases, and to provide the bench and bar with guidelines in this area, we take this opportunity to clarify the law in Alabama with regard to non-statutory grants of immunity.
We begin by noting that both parties agree that Gipson v. State, 375 So.2d 514 (Ala.1979), is the leading case in Alabama with regard to non-statutory grants of immunity. In Gipson, a witness who was given a non-statutory grant of immunity breached an oral condition of the agreement by not telling the truth on the witness stand. The Court in Gipson held in a plurality opinion that under proper circumstances non-statutory grants of immunity are allowable in Alabama. In fact, only one menber of the Court expressed his view that non-statutory grants of immunity are per se invalid. We know of no reason why we should depart from our plurality holding in Gipson. In other words, we are of the opinion that non-statutory grants of immunity can be valid in Alabama, so long as they follow the guidelines hereinafter announced.
First, we are well aware of the fact that grants of immunity play a vital role in the performance of the duties of prosecuting attorneys, and that without this method of obtaining valuable testimony prosecuting attorneys would be severely hampered in their efforts to gain convictions. Mindful though we are of this need on the part of prosecutors, it must be balanced against the potential dangers involved in allowing all prosecuting attorneys unbridled discretion in granting immunity. For example, a person might agree to testify on the belief that he had been granted “transactional” immunity when, in reality, he only had been given “use” immunity, in which case the prosecution could still seek a conviction with regard to his participation in the illegal activities about which he testified. Therefore, in an attempt to prevent any potential dangers involved in granting immunity, in order for an immunity agreement to be valid it must be signed by the district attorney and approved by the trial judge. The involvement of the trial judge in the agreement to grant immunity pledges the public faith to the potential witness, and further ensures that the State will not renege on its promise not to prosecute and will proceed in good faith.[1]
In return for this added assurance by the trial judge, the witness must not only testify, but must testify truthfully, in response to the prosecutor’s questions. As in Gipson, if the witness gives false testimony, he will have failed to perform his end of the agreement and the prosecutor will not be bound by the agreement not to prosecute. We point out here that this requirement upon the witness is also a limitation on the prosecution, because it forbids unconditional grants of immunity.
Finding the grant of immunity in this case valid, we address the issue of whether Roberts can be forced to waive his privilege against self-incrimination under Article 1, § 6, of the Alabama Constitution of 1901 and to testify against his will. Notwithstanding our resolution of the first issue, we are of the opinion that Roberts cannot be forced to testify against his will before the grand jury in this case.
The privilege against self-incrimination is a fundamental right guaranteed to all citizens of this state by the Alabama *447 Constitution. The significance of this privilege cannot be overstated. Thus, a person’s right to refuse to testify concerning matters which may lead to criminal charges being brought against him in the future must not be outweighed by the prosecution’s interest in obtaining a conviction on the basis of his testimony. This is not to say that a person may not choose to waive his right against self-incrimination and testify before the grand jury based upon a valid grant of immunity. In such a case, the person chooses to accept the prosecutor’s grant of immunity and is bound by its terms and must testify truthfully. In the case before us, however, Roberts never accepted the tendered grant of immunity. Rather, he chose not to waive his right against self-incrimination. We are of the opinion that this is a choice that Roberts must be allowed to make. Otherwise, we would be saying that a fundamental protection guaranteed to him by the Alabama Constitution could be taken away from Roberts against his will. We do not believe that the prosecution’s interest in obtaining a conviction in this case is so great as to warrant such an intrusion upon Roberts’s constitutionally protected right.
Another reason why we hold that Roberts cannot be forced to waive his privilege against self-incrimination is that, even if we held that the grant of immunity in this case was valid in Alabama courts, there is no guarantee that Roberts could not be prosecuted in another jurisdiction in connection with his activities at the State Docks. It would indeed be an unconscionable result if we allowed the circuit court to order Roberts to testify, based upon the grant of immunity, and then Roberts was prosecuted and convicted in a sister state.
Therefore, for the above-stated reasons, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
MADDOX and BEATTY, JJ., concur in the result.

. Our holding in this case does not render inapplicable the doctrine of prosecutorial immunity should appropriate facts arise. See Gipson v. State, 375 So.2d 514 (Ala.1979).